IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 21-cr-00392-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DANIEL STONEBARGER,

    Defendant.

## INFORMATION

The Acting United States Attorney charges:

**Background**

1. The United States Small Business Administration ("SBA") is an executive--branch agency of the United States government that provides support to entrepreneurs and small businesses.

2. In or around March 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted to provide emergency financial assistance to the millions of Americans suffering adverse economic effects caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and expanded existing programs, including programs created or administered by the SBA.

3. The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest financing to small businesses, renters, and

homeowners in regions affected by declared disasters.

4. The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses, known as Economic Injury Disaster Grants (EIDGs). The amount of the advance was determined by the number of employees the applicant certified having. The advances did not need to be repaid.

5. In order to obtain an EIDL and/or EIDG, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees and the entity's gross business revenues and cost of goods sold in the twelve months prior to January 31, 2020. The amount of the loan, if approved, was determined based, in part, on the information provided concerning the number of employees, gross revenue, and cost of goods.

6. Any funds issued under an EIDL or EIDG were issued directly by the SBA. EIDL funds were permitted to be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

7. Another source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

8. In order to obtain a PPP loan, the authorized representative of a business was required to state the business's average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the small

business was eligible to receive under the PPP.

9. A participating lender would then process the PPP loan application. If the PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were fully guaranteed by the SBA.

10. Lender 1, based in California, participated in the PPP as a lender to small businesses.

11. The Colorado Department of Labor & Employment ("CDLE") administered another source of pandemic relief, the Pandemic Unemployment Assistance ("PUA") program. PUA was designed to provide unemployment benefits to workers affected by the pandemic who were not otherwise eligible for regular unemployment benefits. PUA was funded in part by the State of Colorado and in part by the United States government.

12. At all times relevant to this Information, the defendant, **DANIEL STONEBARGER**, was a resident of the State and District of Colorado.

13. Person 1 and Person 2 are relatives of the defendant. To further the scheme, the defendant used their identities and personal identifying information to obtain EIDL loans and grants in their names.

## The Scheme To Defraud

14. Beginning in or around April 5, 2020, and continuing until in or around April 2021, within the State and District of Colorado and elsewhere, the defendant knowingly and with intent to defraud, devised, participated in, executed, and attempted to execute a scheme and artifice to defraud the United States, the State of Colorado,

and Lender 1 to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and the concealment of material facts.

15. As part of the scheme to defraud, the defendant submitted false and fraudulent EIDL and PPP applications to the SBA and to Lender 1 and received loans and grants totaling over $855,000 based on those fraudulent applications.

16. As further part of the scheme, the defendant claimed and received over $28,000 in unemployment insurance benefits to which he was not entitled.

### Manner and Means of the Scheme to Defraud

17. The fraudulent scheme operated and was carried out, in substance, as follows:

**EIDL Scheme**

18. The defendant submitted and caused to be submitted numerous fraudulent EIDL applications to the SBA.

19. The SBA funded five of these EIDLs for a total of approximately $353,500, plus an additional $28,000 in EIDGs for these five entities. The approved EIDL applications, and resultant EIDGs, included the following:

| Business Name | Applicant Name | Loan Amount | Grant Amount | Claimed Number of Employees | Claimed Gross Revenue | Claimed Cost of Goods Sold |
|---|---|---|---|---|---|---|
| Finish Armor, LLC | DANIEL STONEBARGER | $150,000 | $2,000 | 2 | $650,000 | $300,000 |
| You Want it We'll Find It | DANIEL STONEBARGER | $69,500 | $5,000 | 5 | $274,000 | $125,000 |
| Chan Agricultural, LLC | Person 1 | $45,000 | $10,000 | 10 | $350,000 | $100,000 |
| Custom Cannon Carriages, LLC | Person 2 | $65,000 | $10,000 | 10 | $450,000 | $175,000 |
| Custom Canon Company, LLC | Person 2 | $24,000 | $1,000 | 1 | $100,000 | $50,000 |

20.     The defendant falsely represented that the information provided in the EIDL applications was true and accurate.  Specifically, as forth in the table above, the defendant falsely stated the number of employees, the purported gross revenues, and the purported cost of goods sold for each of these entities.

21.     The defendant submitted multiple other fraudulent EIDL applications in his, Person 1, and Person 2's names in the fake business names of DC4 Nano Finish, LLC, Crooked Balls, Kahzz Agriculture, Jeatz Agriculture, and Jeatz, LLC. The loan for

DC4 for Nano Finish was approved, but the funds were never deposited. The remaining applications were denied.

22.   In all of the above-described funded EIDL applications, the defendant falsely represented that the funds would be used to pay payroll and other permissible expenses when, in fact, the defendant and Person 1 used the majority of these proceeds for their personal benefit.

**PPP Scheme**

23.   As further part of the scheme, the defendant submitted and caused to be submitted a fraudulent PPP loan application to Lender 1.

24.   Specifically, on or about June 9, 2020, the defendant submitted a PPP application for Finish Armour, LLC to Lender 1. He falsely represented that the business had been established on January 1, 2020, had 44 employees, and that it had a monthly payroll of $254,382.00.

25.   The defendant obtained $473,652.50 in PPP loan proceeds based on these false representations, which he used for his and Person 1's own personal benefit instead of to pay permissible expenses, like payroll.

26.   On June 4, 2020, the defendant submitted a second fraudulent PPP application for Finish Armor, LLC to another lender. He claimed the business was established on August 1, 2019, had annual revenue of $12,984,142, monthly payroll costs of $267,495 and 48 employees. These numbers differed from those on prior applications. The defendant sought a loan of $650,000 in this application.

27.   The very next day, on June 5, 2020, the defendant submitted a duplicate

PPP application to the same lender for the same business. This time, however, the defendant claimed the business was established on December 31, 2019, had annual revenue of $8,000,000, monthly payroll costs of $327,191.31 and 26 employees. The defendant sought a loan of $817,978.

28. This lender requested additional documentation which the defendant did not provide. These loan applications were denied.

**Colorado Pandemic Unemployment Assistance Scheme**

29. As part of the scheme, the defendant applied for and obtained approximately $28,142 in Colorado PUA to which he was not entitled.

30. Specifically, in or around May 28, 2020, the defendant applied for and obtained PUA based upon his alleged unemployment from Finish Armour, LLC, and requested unemployment benefits backdated to March 15, 2020. However, this company was not formed until April 1, 2020, which was after the CARES Act was passed, and he therefore was not eligible for these benefits based on his alleged unemployment from this company. The defendant used the PUA money for his own personal benefit.

**COUNT 1**
**Wire Fraud, 18 U.S.C. § 1343**

31. The allegations in paragraphs 1 through 28 of this Information are re-alleged and incorporated as if fully set forth herein.

32. On or about April 5, 2020, in the State and District of Colorado, and

elsewhere, defendant **DANIEL STONEBARGER**, with intent to defraud, having devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and attempting to do so, did, for the purpose of executing the scheme and artifice, knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, pictures, and sounds, to wit, the submission of an EIDL application for $150,000 for Finish Armor, LLC. Specifically, the defendant caused the SBA in Denver, Colorado to create and certify the payment file for this loan to Finish Armor, LLC and transmit it via interstate wire communications from Colorado to the U.S. Treasury processing site located in the Kansas City Regional Operations Center in Kansas City, Missouri. After a computer operator at the U.S. Treasury disbursing office in Kansas City, Missouri performed payment operations to complete the processing of the file, an Automated Clearing House (ACH) payment file was transmitted to the Federal Reserve Bank ACH processing site in New Jersey. The Federal Reserve Bank in New Jersey processed the payment file and sent $149,900 to the defendant's bank whose server is located in St. Louis, Missouri, with Finish Armor, LLC designated as the payee.

      All in violation of Title 18, United States Code, Section 1343.

## Forfeiture Allegation

      33.    The allegations contained in Count 1 of this Information are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28,

United States Code, Section 2461(c).

34. Upon conviction of the violations alleged in Count 1 of this Information involving the commission of violations of Title 18, United States Code, Section 1343, defendant DANIEL STONEBARGER shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c) any and all of the defendant's right, title and interest in all property constituting and derived from any proceeds the defendant obtained directly and indirectly as a result of such offense, including, but not limited to: 1) $548,861.29 in fraud proceeds seized from his bank account ending in 6774, Civil Case No. 21-mc-00138-SKC; 2) a 2016 Land Rover Range Rover seized in Civil Case No. 21-mc-00142-SKC ; and 3) a money judgment in the amount of the proceeds obtained by the defendant's scheme.

35. If any of the property described above, as a result of any act or omission of the defendant:

- a) cannot be located upon the exercise of due diligence;
- b) has been transferred or sold to, or deposited with, a third party;
- c) has been placed beyond the jurisdiction of the Court;
- d) has been substantially diminished in value; or
- e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

MATTHEW T. KIRSCH

Acting United States Attorney

By: *s/ Martha A. Paluch*
Martha A. Paluch
By: *s/ Sarah H. Weiss*
Sarah H. Weiss
Assistant United States Attorneys
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0409
E-mail: Martha.Paluch@usdoj.gov
E-mail: Sarah.Weiss@usdoj.gov
Attorneys for the United States