DocuSign Envelope ID: E4C65193-8D74-46ED-8CCC-B02D40665FBB

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-00392-RM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     DANIEL STONEBARGER,

      Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Martha A. Paluch and Sarah H. Weiss, Assistant United States Attorneys for the District of Colorado, and the defendant, DANIEL STONEBARGER, personally and by counsel, Daniel Perlman, Esq., submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I.    AGREEMENT

**A. Defendant's Plea of Guilty:**

The defendant agrees

(1)    to waive indictment and plead guilty to an Information charging a violation of Title 18, United States Code, Section 1343, Wire Fraud;

(2)    to waive certain appellate and collateral attack rights, as explained in detail below;

(4)    be liable for restitution of **$886,970.71**; approximately **$855,252.50** in loan/grant proceeds plus **$17,508.63** in interest and **$14,209.58** in fees incurred by the SBA and lenders minus the funds seized or returned as

Court Exhibit 1

listed below. The amount due and owing to each entity will be specified prior to sentencing;

(5)    be liable for restitution to the Colorado Department of Labor and Employment (CDLE) in amount of approximately **$28,142** for unemployment insurance funds to which he was not entitled;

(6)    to the entry of a final order of forfeiture described fully below;

(7)    Agrees and consents to the forfeiture of the following assets pursuant to any federal criminal, civil, and/or administrative forfeiture action: **$548,861.29** seized from Account No. XXXX-XXXX-6774, account title Finish Armor, LLC, seized in Civil Case No. 21-mc-00138-SKC; and 2016 Land Rover Range Rover, seized in Civil Case No. 21-mc-00142-SKC;

(8)    Agrees to a forfeiture money judgment for the total amount of restitution.

## B. Government's Obligations:

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A). The government agrees not to bring other charges against the defendant based on information currently known to the United States Attorney's Office, District of Colorado. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, file additional charges against the defendant related to his conduct described below.

The government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a). If the defendant does not engage in prohibited conduct or otherwise implicate USSG § 3C1.1, the government agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

The government agrees to recommend a sentence at the low-end of the applicable guideline range for the criminal history and total offense level calculated by

the Court at sentencing. The defendant is free to file a motion for a variance under 18 U.S.C. §3553(a).

### C. Appellate Waiver:

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1)　　the sentence exceeds the maximum sentence provided in the statute of conviction, 18 U.S.C. § 1343.

(2)　　the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of **20**; or

(3)　　the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1)　　the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2)  the defendant was deprived of the effective assistance of counsel; or

(3)  the defendant was prejudiced by prosecutorial misconduct.

The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

**D. Forfeiture of Assets**:

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere. The assets to be forfeited specifically include but are not limited to: 1) **$548,861.29** seized from Account No. xxxx-xxxx-6774, account title Finish Armor, LLC,

seized in Civil Case No. 21-mc-00138-SKC; 2) 2016 Land Rover Range Rover, seized in Civil Case No. 21-mc-00142-SKC; and 3) a money judgment in the amount of the proceeds obtained by the defendant's scheme, which will be credited with any net proceeds obtained from judicially forfeited assets. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his/her rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him/her if notice is not sent within the prescribed time frames. The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

The United States Attorney's Office for the District of Colorado will recommend to the Attorney General that any net proceeds derived from the sale of judicially forfeited assets be remitted or restored to eligible victims of the offense, for which the defendant has pleaded guilty, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and any other applicable laws, if the legal requirements for recommendation are met. The defendant understands that the United States Attorney's Office only has authority to recommend

such relief and that the final decision of whether to grant relief rests solely with the Department of Justice, which will make its decision in accordance with applicable law.

## II.  ELEMENTS OF THE OFFENSE

The parties agree that the elements of wire fraud, in violation of Title 18, United States Code, Section 1343, are as follows:

First: the defendant devised or intended to devise a scheme to defraud or obtain money or property by means of false or fraudulent pretenses, representations or promises;

Second: the defendant acted with specific intent to defraud;

Third: the defendant used interstate or foreign wire communications facilities, or caused another person to use interstate or foreign wire communications facilities for the purpose of carrying out the scheme; and

Fourth: the scheme employed false or fraudulent pretenses, representations, or promises that were material.

Tenth Circuit Pattern Jury Instructions (Criminal Cases), 2011, § 2.57 (updated 2018).

## III.  STATUTORY PENALTIES

The maximum penalties for a violation of Count 1 of the Information are: not more than 20 years' imprisonment; maximum term of supervised release of three years; maximum fine of $250,000 or twice the gain or loss from the offense, or both imprisonment and a fine; $100 mandatory victim's fund assessment fee; restitution of an amount to be determined at the time of sentencing.

## IV.    COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V.    STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts that may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree the government would be able to prove the following facts at trial:

### Background Related to Pandemic-Related Relief Programs

The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. In or around March 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted to provide emergency financial assistance to the millions of Americans suffering adverse economic effects caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and expanded

existing programs, including programs created or administered by the SBA. The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters. The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses, known as Economic Injury Disaster Grants (EIDGs). The amount of the advance was determined by the number of employees the applicant certified having. The advances did not need to be repaid.

In order to obtain an EIDL and/or EIDG, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees and the entity's gross business revenues and cost of goods sold in the twelve months prior to January 31, 2020. The amount of the loan, if approved, was determined based, in part, on the information provided concerning the number of employees, gross revenue, and cost of goods. Any funds issued under an EIDL or EIDG were issued directly by the SBA. EIDL funds were permitted to be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

Another source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In order to obtain a PPP loan, the authorized representative of a business was required to state the business's average monthly payroll expenses and number of employees. These figures

were used to calculate the amount of money the small business was eligible to receive under the PPP. A participating lender would then process the PPP loan application. If the PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were fully guaranteed by the SBA. The defendant's fraudulent PPP application was submitted to Lender 1, which participated in the PPP program and was based in California.

The Colorado Department of Labor & Employment ("CDLE") administered another source of pandemic relief, the Pandemic Unemployment Assistance ("PUA") program. PUA was designed to provide unemployment benefits to workers affected by the pandemic who were not otherwise eligible for regular unemployment benefits. PUA was funded in part by the State of Colorado and in part by the United States government.

### SBA Loans Obtained by the Defendant

*Finish Armor, LLC EIDL/EIDG*

On April 5, 2020, the defendant submitted an EIDL application on the SBA website for the business Finish Armor LLC, with trade name "Finish Armnor" (sic), and EIN XX-XXX3834. For "Primary Business Address," the defendant listed an address on South University Blvd., Highlands Ranch, CO, 80126. The defendant claimed the business was established on January 1, 2019. He claimed gross revenues for the twelve months prior to January 31, 2020 of $650,000.00, and costs of goods sold for the same time period to be $300,000.00. The defendant claimed the business activity was "Manufacturing," and that the number of employees as of January 31, 2020, was two.

The defendant listed himself as the sole owner of Finish Armor LLC and provided his home address in Highlands Ranch, CO for the business. The defendant initially provided his personal checking account for the business on the EIDL application, Account XXXX-3089. The defendant later changed the account for this loan to a business banking account in the name of Finish Armor LLC, Account XXXX- 6761. The defendant created this business account on April 5, 2020, the same day he submitted the EIDL application.

This EIDL application was approved, and the defendant signed the Loan Authorization and Agreement for a $150,000.00 EIDL on June 5, 2020. According to bank records, **$149,900.00** ($100 withheld for SBA fee) was deposited on June 9, 2020 into Account XXXX-6761. ACH information on the account statement confirmed this was for the SBA EIDL for Finish Armor, LLC. At the time of the deposit, Finish Armor LLC Account XXXX-6761 had a balance of $25.00.

An EIDG for **$2,000.00** was also approved from this application and deposited into the same account on June 26, 2020.

*Finish Armor, LLC PPP Loan to Lender 1*

On or around June 9, 2020, the defendant submitted a PPP application for Finish Armor, LLC to Lender 1. Lender 1 is a lender approved by the SBA to underwrite and fund PPP loans, and is located in California. The defendant listed Finish Armor LLC's business address as the same South University Blvd., Highlands Ranch address as the previously referenced EIDL, and he used the same EIN. He listed his name and home address as the owner and primary contact for the business. However, on this

application, the defendant claimed 44 employees, rather than the two employees claimed on the EIDL application, and an average monthly payroll of $254,382.00.

The defendant also submitted to Lender 1 in support of the loan application an IRS Form 941 for January, February, and March 2020. The defendant listed the same EIN, a business name of "Finsih Armor, LLC" (sic), the same South University Blvd. address (this time with a suite number). The defendant listed 44 employees and claimed total tax deposits for the quarter of $150,469.37. The form was purportedly prepared and e-signed on April 15, 2020 by a J.M., with a 303 (Colorado) area code phone number, which is the same number listed for the defendant on the PPP application. The defendant admits that J.M. was deceased prior to the date he affixed J.M.'s purported e-signature to the Form 941.

In the EIDL application, the defendant claimed that Finish Armor, LLC was established and under current ownership since January 1, 2019. However, documentation provided by Lender 1 regarding the PPP application included a letter from the defendant stating in part:

> To whom it may concern,
>
> In regards to the question when did Finish Armor LLC, open? We opened on January 1, 2020.
>
> In addition our Payroll started on January 1, 2020 as well.

A PPP loan for **$473,652.50** was approved and that amount was transferred from Lender 1 to Account XXX-6774 on June 29, 2020. The deposit was reversed on June 30, 2020, for unknown reasons, and re-deposited on July 1, 2020 into the same account.

*Finish Armor, LLC PPP Loan Applications to Lender 2*

On or around June 4, 2020, the defendant, using his name and SSN, initiated a PPP application online to Lender 2 for the business Finish Armor, LLC, with the same EIN. The defendant claimed the business was established on August 1, 2019, had annual revenue of $12,984,142.00, monthly payroll costs of $267,495.00, and 48 employees. These numbers differed from responses on other loan applications for the same business. The defendant sought a loan of $650,000.00, to be deposited in an account he established with Lender 2 around the same time for the business "First Armor, LLC."

On or around June 5, 2020, the defendant submitted a duplicate PPP application online to Lender 2 for the same business. However, in this application, the defendant claimed the business was established December 31, 2019, had annual revenue of $8,000,000.00, monthly payroll costs of $327,191.31, and 26 employees. The application sought a loan of $817,978.00.

Lender 2 requested additional documentation to verify the applications, which the defendant did not provide. The loan applications were denied.

*You Want it Well (sic) Find It EIDL/EIDG*

On April 5, 2020, the defendant submitted an EIDL application for the business "You Want it Well (sic) Find It" with trade name "YouWantWellFindIt" and a business tax ID that is the same as the defendant's SSN. The defendant listed the same street address as Finish Armor, though the city was misspelled in a different way.

On the application, the defendant claimed gross revenues for the twelve months prior to January 31, 2020, of $274,000.00, and costs of goods sold for the same time

period of $125,000.00.   The defendant listed the number of employees as of January 31, 2020, as five.

The sole owner listed on the application was Daniel Stonebarger, with a date of birth and SSN that match that on file with the Colorado DMV. The bank account number initially provided on the application was an account with Green Dot, but this was later changed by the defendant to Account XXXX-6774.  This account is the same account into which the PPP loan for Finish Armor was deposited.

This loan application was approved, and on June 15, 2020, **$69,400.00** in EIDL funds were deposited into Account XXX-6774.  This account is titled to Finish Armor, LLC, not You Want it Well (sic) Find It. On June 26, 2020, a **$5,000.00** EIDG based on this application was deposited into the same account.

### Further Investigation into Finish Armor, LLC and You Want it Well Find It

According to information provided by the SBA, EIN XX-XXX3834 was established on or around April 2, 2020 by the defendant. This was only three days before his first EIDL application. According to the Colorado Secretary of State business search, Finish Armor LLC was incorporated as an LLC on April 1, 2020 by Daniel D. Stonebarger with a South University Blvd. address but a different street number. This does not appear to be a valid street address.  On April 5, 2020, the street address was changed to the same South University Blvd. address referenced above.

This South University Blvd. address is the address of a UPS Store.  That UPS Store provided documentation showing that on June 4, 2020, a mailbox was rented by Dan Stonebarger and his wife using their home address in Highlands Ranch for the use by the businesses Finish Armor, LLC and Jeatz, LLC. This was after the EIDL

DocuSign Envelope ID: E4C65193-8D74-46ED-8CCC-B02D40665FBB

applications for Finish Armor, LLC, but the day before the Loan Authorization and Agreement was e-signed. It was also five days before the PPP Borrower Application Form was e-signed by Daniel Stonebarger.

On January 19, 2021, the address for Finish Armor, LLC was changed to an address on Sherman Street in Englewood, CO. This address is an apartment at a senior living community.

"You Want it Well (sic) Find It, LLC was first incorporated in Colorado on February 8, 2019, by the defendant's wife. This entity did not file the required annual report and was voluntarily dissolved on June 6, 2020. On the Statement of Dissolution, the address is given as the address and box number of the box in the defendant and his wife's names at the UPS Store.

Also, on June 6, 2020, "You Want it Well (sic) Find It, LLC" was incorporated in Colorado by Daniel Stonebarger with a different street address on South University Blvd., the same incorrect address used in the initial incorporation of Finish Armor, LLC.

The Colorado Department of Labor and Employment has no record of covered employment in the names of Daniel Stonebarger or his wife, nor any records for Finish Armor LLC or You Want It Well Find It.

<u>*Additional EIDL Attempts by the Defendant*</u>

The defendant submitted three additional EIDL applications in the fake business name of DC4 Nano Finish, LLC. One of these loans was funded for $77,500 but was not deposited into the defendant's bank account. Additional EIDLs submitted by the defendant in the name of Crooked Balls and Kahzz Agriculture were denied.

## *Chan Agriculture, LLC EIDL*

An EIDL application for Chan Agriculture was submitted to the SBA on April 5, 2020 purportedly in the defendant's wife's name. A prior business entity in the defendant's wife name was incorporated with the Colorado Secretary of State in January 2015 and that entity went delinquent in June of 2017. On June 14, 2020, a statement to cure delinquency was filed and the name of the business entity was changed to Chan Agriculture, LLC, purportedly by the defendant's wife. The UPS box opened on June 4, 2020, by the defendant and his wife was listed as the address for Chan Agriculture, LLC. The application claimed this company had 10 employees, gross revenue of $350,000, and cost of goods sold of $100,000. As a result of this application, an EIDL for **$44,900** ($100 withheld for SBA fee) and an EIDG for **$10,000**, for a total of **$54,900,** was deposited into the defendant's wife's personal bank account.

Three other EIDL applications were submitted in companies purportedly held in the defendant's wife's name; two for Jeatz Agriculture and another for Jeatz, LLC. These applications were denied.

The defendant claims, and the government cannot at this time disprove, that he had access to his wife's email account and completed the EIDL applications in her name without her knowledge. He further claims he told his wife the numbers submitted to the SBA were "estimates" and that he could make up the income claimed during the year. He claims he assured his wife they could spend the funds received for non-business purposes.

### *Custom Cannon Carriages, LLC EIDL*

An EIDL application was submitted for Custom Cannon Company, LLC to the SBA on June 10, 2020, purportedly by the defendant's 76-year-old father. This company was incorporated four days earlier, again purportedly by the defendant's father. An EIN for this company was established for this company with the IRS two days after incorporation. This application claimed that this business had 10 employees, gross revenue of $450,000, and cost of goods sold of $175,000. The address for this company was the defendant's father's address in Idaho. As a result of this application, an EIDL was funded in the amount of **$65,000** and an associated EIDG was funded in the amount of **$10,000**. Of this, **$64,900** ($100 withheld for SBA fee) was deposited into the defendant's father's bank account. On October 25, 2021, the defendant's father returned to the USSS **$74,900** (the full amount, minus the $100 SBA processing fee).

### *Custom Canon Company LLC EIDL*

An EIDL application was submitted for Custom Cannon Company, LLC to the SBA on April 7, 2020, purportedly by the defendant's father. This application claimed that this business had one employee, gross revenues for the twelve months prior to January 31, 2020, of $100,000, costs of goods sold of $50,000, and annual operation expenses for secular social services provided by a faith-based-entity of $10,000. The address for this company was an address in Fall River Mills, CA. The business owner was listed as the defendant's father with the defendant's father's address in Idaho. As a result of this application, an EIDL was funded in the amount of **$24,000** and an associated EIDG was funded in the amount of **$1,000**, with both amounts deposited in an account in the defendant's father's name.

As with his wife, the defendant claims he submitted these applications in his father's name and assured his father the funds were legitimately deposited into the father's account. At this time, the government cannot disprove the defendant's claims regarding his father's lack of culpability.

### Use of Proceeds of Finish Armor, LLC and You Want it Well Find It SBA Loans

According to bank records, there were no transactions on Account XXXX-6761 between the $25.00 initial deposit on April 20, 2020 and the deposit of the $149,990.00 in EIDL loan funds for Finish Armor on June 9, 2020. On June 9, 2020, $20,000.00 was transferred from Account XXXX-6761 to Account XXXX-6774 (also Finish Armor, LLC). On June 10, 2020, $30,000.00 was withdrawn in cash. On June 10, 2020, $21,576.00 was transferred from Account XXXX-6761 to Account XXXX-3089 (the defendant's personal checking account). On June 10, 2020, a cashier's check was drawn off this account payable to the defendant's wife for $15,527.55. On June 10, 2020, a cashier's check was drawn off this account payable to a person with the initials MBC for $38,000.00. Finally, on June 12, 2020, an additional $21,426.00 was transferred from Account XXXX-6761 to Account XXXX-3089. Account XXXX-6761 was closed on July 13, 2020 with a remaining balance of $5,395.45.

On June 19, 2020, following the deposit of $69,400.00 into Account XXXX-6774 for the EIDL for You Want it Well Find It, $9,675.00 was transferred from XXXX-6774 to XXXX-3089, The defendant's personal account. On July 1, 2020, after the re-deposit of the $473,652.50 PPP loan for Finish Armor, LLC into account XXXX-6774, there were no further transactions on the account before it was closed on July 13, 2020, with a

remaining balance of **$548,861.29**. This amount was seized by federal law enforcement on June 2, 2021.

The transfers of SBA funds to the personal account of the defendant, XXXX-3089, of $21,576.00, $21,426.00, and $9,675.00 funded numerous personal purchases that appear unrelated to business expenses. Examples include approximately $9,000 for plastic surgery, $7,000 to Physicians Weight Loss, $5,000 in bridal expenses, $10,000 in jewelry, over $2,800 to Peloton, travel, and resort expenses.

### Purchase of Land Rover Range Rover

On June 10, 2020, the defendant bought a 2016 white Range Rover for $38,000.00 from a woman with the initials MBC. The defendant stated he was purchasing the Range Rover as a "gift for his wife."

### Colorado Pandemic Unemployment Assistance Scheme

The defendant first applied for Colorado Pandemic Unemployment Assistance (PUA) on May 28, 2020, and requested his claim be backdated to March 15, 2020. He received the first payment on June 1, 2020. The defendant based this claim on his alleged unemployment from Finish Armor LLC. However, this business was registered with the Colorado Secretary of State on April 1, 2020, which means the defendant would not have been eligible for PUA based on his alleged unemployment from this entity. Although the defendant did not list his other business You Want it, Well Find it on his PUA Claim Paperwork, this business would have not qualified him for PUA either. This is because this business was previously owned by his wife but was dissolved on February 8, 2009. The defendant became the Registered Agent of this entity with a formulation date of June 6, 2020. As both entities were established after

DocuSign Envelope ID: E4C65193-8D74-46ED-8CCC-B02D40665FBB

the pandemic began, they were not impacted by COVID and cannot form the basis for legitimate PUA assistance to the defendant. As a result of his fraudulent claims, the defendant was paid **$28,142** for PUA Claim 2020-02.

### Defendant's Cooperation

Once contacted by law enforcement, the defendant retained counsel. The defendant and his counsel met with government counsel, during which time the defendant admitted his conduct as set forth above.

### Charged Count

As charged in the Information, the defendant agrees that on April 5, 2020, to further the scheme set forth above, he knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, pictures, and sounds, to wit, the submission of an EIDL application for Finish Armor, LLC, for $150,000. Specifically, the defendant caused the SBA in Denver, Colorado to create and certify the payment file for this loan to Finish Armor, LLC and transmit it via interstate wire communications from Colorado to the U.S. Treasury processing site located in the Kansas City Regional Operations Center in Kansas City, Missouri. After a computer operator at the U.S. Treasury disbursing office in Kansas City, Missouri performed payment operations to complete the processing of the file, an Automated Clearing House (ACH) payment file was transmitted to the Federal Reserve Bank ACH processing site in New Jersey. The Federal Reserve Bank in New Jersey processed the payment file and sent $149,900 to the defendant's bank whose server is located in St. Louis, Missouri, with Finish Armor, LLC designated as the payee.

## VI.    ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government also has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

a)    Under Section 2B1.1(a)(1), the base offense level is **7**.

b)    The following specific offense characteristics apply: There is a **14**-level increase pursuant to § 2B1.1(b)(1)(H) because the loss was between $550,000 and $1,500,000.[1]

c)    A **2**-level enhancement applies pursuant to 2B1.1(b)(11)(C)(i) for the defendant's use of his family members' means of identification to obtain another means of identification, the loan account numbers, see App. N. 10(C)(ii)(I).

d)    There are no victim-related, role-in-offense, obstruction, grouping,

---

[1] The parties agree that the appropriate measure of loss in this case is the amount of loans, grants, and unemployment benefits the defendant received, and not the amount of funds sought in attempted/unsuccessful applications.

or multiple-count adjustments.

e)      The adjusted offense level is **23.**

f)      The parties agree the defendant should receive a 3-level reduction for acceptance of responsibility pursuant to § 3E1.1(a) and(b). The resulting total offense level is **20.**

g)      The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category **I.**

h)      The career offender/criminal livelihood/armed career criminal adjustments do not apply.

i)      The advisory guideline range resulting from these calculations is **33-41** months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from **33** months (bottom of Category I) to **87** months (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

j)      Pursuant to guideline § 5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be **$15,000 to $150,000**, plus applicable interest and penalties.

k)      Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least one but not more than three years.

l)      The government will seek a restitution order in an amount to be determined prior to sentencing and a final money judgment order for that same amount.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including

imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII. ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 1/23/2022    _____

DANIEL STONEBARGER
Defendant

Date: 1/24/2022    _____

DANIEL PERLMAN
Attorney for Defendant

Date: 1/20/22    MARTHA PALUCH    Digitally signed by MARTHA PALUCH
Date: 2022.01.20 13:33:51 -07'00'

MARTHA A. PALUCH
Assistant U.S. Attorney

Date: 1/20/22    SARAH WEISS    Digitally signed by SARAH WEISS
Date: 2022.01.20 14:19:52 -07'00'

SARAH H. WEISS
Assistant U.S. Attorney